**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EDSON DA CRUZ CONCEICAO, | : | Civil Action No. 11-4119 (CCC) |
| Petitioner, | : | |
| v. | : | O P I N I O N |
| ERIC H. HOLDER, JR., et al., | : | |
| Respondents. | : | |

**APPEARANCES:**

**EDSON DA CRUZ CONCEICAO**, Petitioner pro se
J#20J-003768
c#384-504 DORM #3
Essex County Correctional Facility
354 DOREMUS AVE.
Newark, New Jersey 07105

**PETER G. O'MALLEY**, Counsel for Respondents
Office of the U.S. Attorney
970 Broad Street
Suite 700
Newark, New Jersey 07102

**CECCHI**, District Judge

Petitioner, Edson Da Cruz Conceicao("Petitioner"), is currently being detained by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") at the Essex County Correctional Facility in Newark, New Jersey, pending his removal from the United States. On or about July 18, 2011, Petitioner filed this Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, in which he challenges his detention pending removal

as unconstitutional. Petitioner brings this action against Eric Holder, Jr., Roy L. Hendricks, and Kimberly Zanotti (hereinafter referred to as "Respondents" or the "Government") in this action. Based upon Petitioner's affidavit of indigence, Petitioner's application to proceed in forma pauperis in this action is hereby granted. For the reasons stated below, this petition for habeas relief will be denied.

**I. BACKGROUND**

Petitioner is a native and citizen of Brazil who entered the United States on a visitor's visa on or about November 6, 1999. (Resp't Ans., Declaration of Peter G. O'Malley ("O'Malley Decl."), Ex. 1, I-94 Arrival Record.) On June 9, 2008, Petitioner was arrested in Fairview, New Jersey, for theft of movable property. (O'Malley Decl., Ex. 2, Pet'r's arrest record.) On or about September 3, 2009, Petitioner was convicted and incarcerated on that charge. (O'Malley Decl, Ex. 3, Inmate Database Search.) On or about September 9, 2009, Petitioner was charged with removability as a visa overstay. (O'Malley Decl., Ex. 4, R. of Deportable Alien.) On January 6, 2010, Petitioner filed an application for asylum. (O'Malley Decl., Ex. 5, I-589 Partial Appl. for Asylum and Withholding of Removal.) On August 5, 2010, an immigration judge found that Petitioner's asylum application was untimely, and ordered him removed to Brazil. (O'Malley Decl., Ex. 6, Order and Oral Decision of the Immigration Judge.) On October

19, 2010, the order was affirmed by the Board of Immigration Appeals ("BIA"). (O'Malley Decl., Ex. 7, BIA Decision.) Petitioner's appeal to the Third Circuit Court of Appeals was dismissed on June 30, 2011, for failure to prosecute. (O'Malley Decl., Ex. 8, Order of the Court of Appeals.) On November 11, 2010, Petitioner was served with a Warning for Failure to Depart, advising him of his obligation to cooperate with ICE in removal efforts, including his obligation to apply for travel documents and comply with instructions from his consulate or embassy. (O'Malley Decl., Ex. 9, Warning for Failure to Depart.) On April 23, 2011, Petitioner was served with a Decision to Continue Detention, in which he was advised that his removal to Brazil was expected in the reasonably foreseeable future, and therefore he would be kept in detention pending removal. (O'Malley Decl, Ex. 10, Decision to Continue Detention.)

On July 26, 2011, ICE officials completed a post-order custody review on Petitioner, and determined that, since his removal to Brazil was expected in the reasonably foreseeable future, Petitioner would not be released. (O'Malley Decl., Ex. 11, post-order custody review worksheet; Ex. 12, Decision to Continue Detention.) Petitioner was again informed of his obligation to assist in removal efforts, which he refused to sign. (O'Malley, Ex. 13, Warning for Failure to Depart.) Another post-order custody review was conducted on Petitioner, resulting in a decision to

continue detention because of Petitioner's refusal to sign for a travel document at the Brazilian Consulate on August 2, 2011. (O'Malley Decl., Ex. 14, post-order custody review worksheet.) On September 13, 2011, Petitioner was served with a Notice of Failure to Comply and on September 15, 2011, he was again advised of his obligation to cooperate. (O'Malley Decl., Ex. 15 & 16, Warning for Failure to Depart.)

In his Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, Petitioner argues that during his twenty-two month detention, he has never had a bond hearing to determine whether prolonged detention is warranted, which violates his due process rights. (Docket Entry No. 1.) On September 29, 2011, Respondents filed their Answer, arguing that "because Petitioner has 'fail[ed] or refus[ed] to make timely application in good faith for travel or other documents necessary to [his] departure,' and has 'act[ed] to prevent [his] removal,' his removal period should be viewed as 'extended' under section 241(a)(1)(C) of the INA. See 8 U.S.C. § 1231(a)(1)(C)." (Docket Entry No. 6.)

In response to the Answer, Petitioner filed a "motion to supplement the record," relying on the Third Circuit's recent holding in Diop v. ICE/Homeland Sec., 656 F.3d 221 (3d Cir. 2011). (Docket Entry No. 8.) Respondents then filed a letter, contending that Diop dealt with the length of time during which an alien in removal proceedings may be held in detention, which has no bearing

4

on the instant case because Petitioner is under a final removal order. (Docket Entry No. 7.) Petitioner filed another document, also relying on the Diop holding. (Docket Entry No. 9.) He then filed two documents seemingly requesting "prosecutorial discretion" pursuant to an internal ICE policy memorandum. (Docket Entry Nos. 10 & 11.) Respondents filed a letter in response, arguing that a memo setting guidelines for the exercise of discretion in the administration of the Immigration and Nationality Act and its implementing regulations is directed to agency personnel, and has no bearing at present on Petitioner's case. (Docket Entry No. 13.)

Finally, on January 6, 2012, Petitioner filed an "Application/ Petition for an emergency stay of removal." (Docket Entry No. 14.) Respondents' letter in response argues that this Court does not have jurisdiction to entertain such an application because Congress revised 8 U.S.C. § 1252(a)(5) to state, in relevant part, that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal . . . ." 8 U.S.C. § 1252(a)(5). (Docket Entry No. 15.)

## II. DISCUSSION

### A. Legal Standard

As stated earlier, Petitioner brings this habeas action under 28 U.S.C. § 2241(c)(3), which requires the petitioner to show that "he is in custody in violation of the Constitution or laws or

treaties of the United States." 28 U.S.C. § 2241(c)(3). The Court has subject matter jurisdiction over this Petition because Petitioner is being detained within its jurisdiction at the time he filed his petition, and because Petitioner asserts that his continued detention is not statutorily authorized and is constitutionally impermissible because it violates due process.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969).

**B. Analysis**

**1. Prolonged Detention**

Petitioner contends that his prolonged detention without a bond hearing is unlawful and a violation of his rights to procedural and substantive due process. The detention of an alien who has been ordered removed is governed by 8 U.S.C. § 1231(a). Section 1231(a)(1) requires the Attorney General to attempt to effectuate removal within a ninety day "removal period." The removal period begins on the latest of the following:

> (i) The date the order of removal becomes administratively final.

> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section 1231(a)(6) permits continued detention if removal is not effected within ninety days. However, interpreting the statute to avoid any question of a due process violation, the Supreme Court has held that such detention is subject to a temporal reasonableness standard. Specifically, once a presumptively reasonable six month period of detention has passed following the issuance of a removal order, a detained alien must be released if he can establish that his removal is not reasonably foreseeable. See Zadvydas v. Davis, 533 U.S. 678 (2001); Clark v. Martinez, 543 U.S. 371 (2005). Thus, the alien bears the initial burden of establishing that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," after which the government must come forward with evidence to rebut that showing. Zadvydas, 533 U.S. at 699-701.

However, "[t]he removal period shall be extended beyond a period of [ninety] days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. §

1231(a)(1)(C). Federal courts have recognized that "Zadvydas does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." Pelich v. INS, 329 F.3d 1057, 1060 (9th Cir. 2003) (cited with approval in U.S. ex rel. Kovalev v. Ashcroft, 71 Fed. Appx. 919, 924 (3d Cir. 2003).

Respondents assert in their brief that Petitioner has failed to cooperate, and that his continued detention is therefore lawful. Specifically, Respondents contend that Petitioner is refusing to sign the travel documents necessary to allow him to return to Brazil. On August 2, 2011, Petitioner was taken to the Brazilian Consulate, but once there, he refused to sign the necessary paperwork. Petitioner has been advised in the "Notice of Failure to Comply," that he would remain in ICE custody because of his refusal to sign the necessary travel documents. (O'Malley Decl., Ex. 15.) Petitioner has not denied Respondents' claims about his refusal to sign the documents.

In a situation such as this, where Petitioner was brought to the Brazilian Consulate to sign the necessary paperwork but refused to do so, he has failed to cooperate in his removal and he has failed, in this Court, to establish that there is no likelihood of his removal in the reasonably foreseeable future. There is no

statutory or due process violation in his continued detention as of this time. However, as Respondents acknowledge, repatriation is a shared responsibility of the government and the alien. Therefore, the petition is denied without prejudice. This Court shall consider a renewed application for relief if, after full cooperation from Petitioner in meeting the government's clearly articulated requirements, the government remains unable to effectuate Petitioner's removal.

2. **Stay of Removal Proceedings**

On January 6, 2012, Petitioner filed a "Motion for An Emergency Stay of Removal." (Pet'r's Mot. Stay, Docket Entry No. 14.) Petitioner requests that this Court "grant a Stay to have his appeal decided on the merits." (Id. at 2.) In response, Respondents argue that "Congress revised 8 U.S.C. § 1252(a)(5) to state, in relevant part, that 'a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal . . . .' 8 U.S.C. § 1252(a)(5) . . . Since the REAL ID Act deprives district courts of jurisdiction over orders of removal, it thus deprives this Court of jurisdiction to stay Petitioner's removal order." (Resp'ts' Jan. 10, 2012 Ltr. 2, Docket Entry No. 15.)

It is unclear what "appeal" Petitioner refers to in his "Motion for An Emergency Stay of Removal." On June 30, 2011, the

9

Third Circuit dismissed his appeal of the BIA's decision and as far as this Court is aware, he does not have any other appeals pending. Further, pursuant to the REAL ID Act, this Court lacks jurisdiction over any claims asserted by Petitioner which seek to challenge his underlying final removal order. See, REAL ID Act, 8 U.S.C. § 1252(a)(5).

The REAL IC Act states that "[n]otwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act. . . ." 8 U.S.C. § 1252(a)(5). Though this Court does retain jurisdiction over Petitioner's challenges to his detention, as discussed above, it does not have jurisdiction over his claims challenging his final order of removal. Bonhometre v. Gonzales, 414 F.3d 442, 446 n.4 (3d Cir. 2005); Calderon v. Holder, No. 10-3398, 2010 WL 3522092, at *2 (D.N.J. Aug. 31, 2010)(dismissing petitioner's challenges to his removal and his request for stay of removal for lack of jurisdiction, pursuant to the REAL ID Act); Gallego-Gomez v. Clancy, No. 11-5942, 2011 WL 5288590, at * 2 (D.N.J. Nov. 2, 2011)("Any challenge that Petitioner may be attempting to assert here with regard to BIA's decision affirming the removal order

issued against him, including his request for a stay of removal, must be filed with the appropriate United States Court of Appeals.") Therefore, Petitioner's motion for a stay of removal is dismissed without prejudice. Petitioner may raise this request before the Court of Appeals.[1]

### 3. Medical Issues

In his second "request for official exercise of discretion," Petitioner outlines several medical issues that are currently affecting him. (Pet'r's Dec. 23, 2011 Ltr. Requesting Discretion 1, Docket Entry No. 11.) He states that he is not receiving the appropriate medical care needed to address these issues. (Id.)

To the extent a prisoner challenges his conditions of confinement, such claims must be raised by way of a civil rights action. See Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002). See also Ganim v. Federal Bureau of Prisons, 235 Fed. Appx. 882, 2007 WL 1539942 (3d Cir. 2007) (challenge to garden-variety transfer not cognizable in habeas); Castillo v. FBOP FCI Fort Dix, 221 Fed.Appx. 172, 2007 WL 1031279 (3d Cir. 2007) (habeas is proper vehicle to challenge disciplinary proceeding resulting in loss of good-time

---

[1]This Court declines to transfer Petitioner's action because it would not be in the interests of justice, as Petitioner already had an appeal of his final removal order dismissed by the Third Circuit for failure to prosecute. See 28 U.S.C. § 1631 (If a civil action is filed in a court that lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed.").

credits, but claims regarding sanctioned loss of phone and visitation privileges not cognizable in habeas).

Here, Petitioner's challenge to any medical issues must be brought by way of a civil rights action or action for declaratory and injunctive relief. Therefore, Petitioner may pursue these claims by filing a civil rights complaint, along with a properly completed application to proceed *in forma pauperis*. This Court expresses no opinion as to the merits of Petitioner's medical claims.

### III. CONCLUSION

For the reasons stated above, the Petition will be denied without prejudice at this time. An appropriate order follows.

Dated: January 25, 2012

_____
CLAIRE C. CECCHI
United States District Judge